## No. 772.

HALL, RODD & PUTNAM *v.* LOUIS V. CHACHERE, Sheriff, et als.
MILLER & FORESTIER, Intervenors.

| | 25 | 493 |
|---|---|---|
| | 50 | 906 |

Where Harwell sold to Mathews a plantation and slaves, who executed certain mortgage notes in favor of said Harwell or order, and subsequently mortgaged said property to Hall, Rodd & Putnam, to secure a debt due them, and then retransferred the property to Harwell, his vendor, who, as a part of the consideration of the retrocession to him, assumed to pay the notes executed by Mathews for the price of the first sale and transferred to third parties by Harwell—two of which notes were redeemed by said Harwell and transferred to Perret, these two notes were extinguished on their return to the possession of Harwell, after he had assumed their payment in the contract with Mathews, by which he repurchased the plantation for which the notes had been given.

If conceded that Harwell could reissue the notes, he could not have revived the mortgage by this reissuing. Mortgages are not subject to the rules of the commercial law by which the rights and obligations of parties to commercial paper are fixed.

The plea that a part of the price bid at the sheriff's sale was for slaves contrarily to the jurisprudence of this State, can not be allowed when, to all intents and purposes, the sheriff's sale has become an executed contract, and the contest between the parties relates only to the distribution of the price.

Where the appellant, since the appeal was taken, has paid the judgment in favor of any of the appellees, this is an abandonment of the appeal as to them.

APPEAL from the Eighth Judicial District Court, parish of St. Landry. *T. H. Lewis,* Acting J. *Joseph M. Moore,* for plaintiffs and appellees. *John H. Overton,* for defendants and appellants. *Henry L. Garland,* for intervenors.

LUDELING, C. J. This suit was commenced by third opposition on the part of the plaintiffs, claiming to be paid by preference out of the proceeds of the sale of certain property, seized and sold as the property of one Harwell, under executions issued under judgments in favor of Miller & Forestier, and Posey, agent of Frank Perret, against said Harwell.

It appears, from the record, that Robert R. Harwell sold to Archibald Mathews a plantation and slaves for $34,000—$8000 cash and the remainder in four installments, for which Mathews executed his mortgage notes in favor of Harwell or order. One of these notes, for $8000, was transferred to Perret shortly after the sale; two of them were pledged by Harwell with Clark, and the other was also transferred, but it does not appear to whom.

In March, 1855, Mathews mortgaged the property bought by him to Hall, Rodd & Putnam to secure a debt due them, and then he retransferred the property to Robert R. Harwell, who, as a part of the consideration of the retrocession to him, assumed to pay the notes (executed by Mathews for the price of the first sale), which he had then disposed of as aforesaid.    After the retransfer to Harwell, Miller & Forestier obtained judgment against him, and recorded their judgment in the parish where the property is situated.    Perret also obtained judgment on the note for $8000, which he held, recognizing his mortgage, and against Harwell personally.    Miller & Forestier caused execution to be issued under their judgment on the twenty-sixth of November, 1858, and a few days thereafter Perret caused an execution to be issued under his judgment.    The property was sold under these executions, and Perret bought it for $23,000.    The execution of Perret was credited with the amount for which it issued, and he retained the balance of the price bid to pay the special mortgages, appearing to exist on the property.

It further appears that the two notes, which had been pledged to Clark, were redeemed by Harwell, and transferred to Perret.

The main contest is concerning the effect of the return of these two notes to the possession of Harwell, after he had assumed their payment in the contract with Mathews, by which he repurchased the plantation for which the notes had been given.    If they were extinguished when they were returned to his possession, by payment or otherwise, the fund to be distributed will be ample to pay all the contesting creditors.

What, then, was the effect of the obligation of Harwell towards Mathews, in regard to the mortgage notes given by him?    Clearly he assumed Mathews' obligation to pay the notes ; and when he acquired them, he discharged the obligation assumed by payment.    If, on the other hand, he was always the owner of said notes, they were extinguished by confusion so soon as he assumed the obligation to pay them. " When the quality of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation."    C. C. 2217.    The principal obligation being extinguished, the accessory obligation necessarily ceased to exist.    And conceding that Harwell could reissue the notes, it is clear he could not have revived the mortgage—merely by reissuing the notes.    Mortgages are not subject to the rules of the commercial law by which the rights and obligations of parties to commercial paper are fixed.    4 R. 416 ; 20 An. 264, Dale v. Risotti.

It is, however, contended, that a part of the price bid was for slaves, and that, under the jurisprudence of this State, to this extent the purchaser is entitled to relief.    The sale was for cash.    The adjudicatee

complied with his bid and received the title and the property. The undistributed portion of the price was held subject to the order of the court. To all intents and purposes, the sheriff's sale is an executed contract—and this contest relates only to the distribution of the price.

It appears that since the appeal was taken, the appellant has paid the judgment in favor of Hall, Rodd & Putnam. This is an abandonment of the appeal as to them.

It is therefore ordered and adjudged, that the appeal be dismissed as to Hall, Rodd & Putnam; and that, as to the other appellees, it be affirmed, with costs of appeal.